30 So.2d 116

**RAPHAEL BROTHERS v. CEROPHYL LABORATORIES, Inc.**

**No. 38186.**

Feb. 10, 1947.

Rehearing Denied March 17, 1947.

Cook, Clark & Egan, of Shreveport, for defendant and appellant.

Booth, Lockard & Jack and Turner B. Morgan, all of Shreveport, for plaintiff and appellee.

FOURNET, Justice.

The defendant, Cerophyl Laboratories, Inc., is appealing from a judgment against it in tort for the loss of the plaintiff's trailer, equipment, and cargo of chickens, totally destroyed as the result of the alleged negligence of the defendant in laying a high pressure three-inch gas pipe line servicing its dehydrating plant near Gilliam, Louisiana.

It appears that the plaintiff, Raphael Brothers, a New Orleans partnership, in the course of its regular business as a wholesale and retail poultry dealer, sent an agent to Arkansas for the purpose of purchasing a load of chickens. The agent made the trip in the plaintiff's trailer-truck manned by its driver. In returning to Louisiana from this trip in the early morning hours just before dawn, the driver, travelling on Highway No. 71, with which he was unfamiliar, passed the regular detour (designated by an arrow only) and, continuing down the road, turned to the left upon reaching the end of the concrete for the purpose of negotiating the turn into the detour at the end of the concrete to reach a black-top highway paralleling the concrete one only a short distance away. As he turned he struck a three-inch pipe line lying exposed in a ditch running along the concrete highway. He struck this pipe line at a place where it entered a shallow culvert forming a bridge over the ditch between the highway and the detour road, causing the pipe line to break and to immediately ignite, by reason of the escaping gas, the trailer and cargo and to totally destroy it, despite the driver's efforts to pull the trailer out of the ditch. The cab or tractor of the trailer-truck was only saved by its hasty uncoupling from the trailer by the plaintiff's agent.

For specific cause of action the plaintiff alleged that the defendant's negligence consists of the laying of this line with second-hand piping in the shallow ditch paralleling the concrete highway and passing it through the culvert lying in the ditch, and over which the entrance to the detour road was constructed, with full knowledge of the narrowness of the culvert and this detour road at the point where it connects with the concrete highway, the shallow depth to which it was laid, and its exposed condition for some two feet at each end of the culvert, all in violation of the regulations of the state highway department, without taking into account the likelihoo

that vehicles crossing over this culvert to enter the detour road would slide or be driven off the end of the culvert and strike this exposed portion of the pipe line, causing it to break, with the probability that the escaping gas would be ignited by the running motor of the vehicle or the exhaust.

The defendant generally denied the allegations of negligence in laying the pipe line and specifically averred that the loss was the result of the dangerous and rapid manner in which the driver of the truck turned into the detour road, and, in the alternative, pleaded the contributory negligence of the driver of the truck carrying the trailer.

The trial judge in rendering judgment in favor of the plaintiff fixed the value of the trailer at $1,200, the value of two extra truck tires at $180, the expenses of the trip at $100, and the value of the chickens and coops at $3,493.03, or a total of $4,-973.03, with legal interest from judicial demand.

We think the preponderance of the evidence shows, as found by the trial judge, that the pipe line was laid as alleged by the plaintiff in its petition and that the plaintiff's driver, who was unfamiliar with Route 71, upon observing the detour sign at the end of the concrete highway stopped his truck and undertook to negotiate the turn into the narrow detour road in low gear and that in doing so, as expressed by the trial judge, he "either missed or slid off the North end of the culvert and then struck the pipe, breaking it, and a spark, either from the exhaust or from metal striking metal, ignited the gas released from its 30 or 35 pounds of pressure within the pipe," resulting in the loss of the trailer, equipment, and cargo, the value of which, as fixed by the trial court, is not questioned.

This presents for our consideration, therefore, the question of (1) whether or not the manner in which the pipe was laid by the defendant constituted negligence, in that it was so constructed that the defendant foresaw or should have foreseen the dangerous potentialities of its instrumentality; and (2) whether there was negligence on the part of the driver contributing to the loss.

In determining the first issue the trial judge very aptly pointed out in his written reasons for judgment that "Natural gas, because of its highly inflammable and explosive character, is an inherently dangerous instrumentality. Those who handle and distribute it are charged with the duty to exercise that degree of care commensurate with its dangerous character and necessary to protect the public from any foreseeable injury therefrom." See, Jackson v. Texas Co., 143 La. 21, 78 So. 137, L.R.A.1918D, 150. He stated further that "Considering the location of this high pressure gas pipe line, its proximity to the highway, the manner of laying it through the shallow culvert, projecting it

out the North end of the culvert exposed, in the face of the fact that said end was observed to be crumpled and bent from repeated striking by traffic, the failure to protect said pipe from the hammering blows of traffic or to warn of its presence and defendant's failure to comprehend the probable consequences of this obviously dangerous situation," he could not escape the conclusion "that plaintiff's allegations of defendant's negligence were fully justified and have been abundantly proved."

■ We concur in the trial judge's conclusions of law for it is the general rule that when roads and highways dedicated and designated for public use are used by individuals for their own convenience and accommodation, such individuals become liable for all damages sustained as the consequence of their improper use or appropriation of these public thoroughfares, and this is true even though that portion used by the individual is outside the way generally travelled by the public. Indiana Natural & Illuminating Gas Co. v. Mc-Math, 26 Ind.App. 154, 57 N.E. 593; Opdycke v. Public Service Ry. Co., 78 N.J.L. 576, 76 A. 1032, 29 L.R.A.,N.S., 71; O'Hanlin v. Carter Oil Co., 54 W.Va. 510, 46 S. E. 565, 66 L.R.A. 893; Thompson v. Union Traction Co., 103 Kan. 104, 172 P. 990; and Carlson v. Mid-Continent Development Co., 103 Kan. 464, 173 P. 910, L.R.A.1918F, 318. This is particularly true when the appropriation of such highway or road consists in the unauthorized and im-proper construction of a pipe line for the transportation of gas, a highly dangerous and inflammable substance ladened with instantaneous explosive potentialities. McWilliams v. Kentucky Heating Company, 166 Ky. 26, 179 S.W. 24, L.R.A.1916A, 1224; Mullins v. United Carbon Co., 282 Ky. 111, 137 S.W.2d ·1089; Murphy v. Ludowici Gas & Oil Co., 96 Kan. 321, 150 P. 581; and 24 Am.Jur. 621, §§ 133, 135, and 139.

In the course of the opinion in the Mullins case [282 Ky. 111, 137 S.W.2d 1090] the court pointed out that "The general law relating to negligence in laying a pipe line is thus comprehensively stated in Willis' Thornton on Oil and Gas, Section 1173: 'The improper laying of a gas line, such as not properly supporting it in loose and shifting soil, is an act of negligence, and if for that reason it breaks and an explosion caused by leakage inflicts injury to one not contributorily negligent, liability attaches. In laying pipe lines the company is chargeable with notice of the tendency of the soil to sink or subside leaving the pipes without proper support.'" It then declared that "The placing of such a pipe line on or slightly under the surface of a highway or other place used by the public may be negligence if it is so located or maintained that it could be reasonably anticipated that any one exercising due care may be injured thereby," again citing Willis' Thornton on Oil and Gas, § 1174.

In the Mullins case the defendant had laid a pipe line across the surface of a driveway leading into the plaintiff's yard and the plaintiff, while backing a car into his yard for the purpose of turning around broke the line and was injured when he inhaled the escaping gas that enveloped him. Commenting on these facts the court said: "In this case the defendant knew plaintiff had the right to drive into his yard and knew that he and others were in the habit of doing so. They were compelled to do this by obstruction of the only other nearby place in which to turn a car. Yet it placed this insecure pipe line, containing a dangerous substance, across his right of way without support. We think the plaintiff made out a case of unquestionable negligence." And in disposing of the defendant's plea of contributory negligence, based on the plaintiff's action in driving across this pipe line known by him to be there, the court said: "The defendant is chargeable with having anticipated that injury would be the natural and probable consequence of such a dangerous condition. Hence it cannot escape liability on the theory that the use by the plaintiff of his driveway was the proximate cause."

In the McWilliams case [166 Ky. 194, 179 S.W. 28] the defendant company under a contract laid an 8-inch gas pipe line under the dirt side of a 40-foot road, 14 feet of such road being covered with macadam. The pipe was either laid near the surface of the dirt road or else the dirt covering the pipe had worked or washed away, the result being that when the plaintiff drove a steam roller with 4-inch spikes down this dirt side of the road in the process of repairing the macadam portion the spikes in the wheels punched holes in the iron gas pipe and he was injured when the escaping gas ignited with the fire in the engine and exploded. In rendering judgment in the plaintiff's favor the court concluded that "it cannot be said as a matter of law that appellees [defendants], in the exercise of the care required, could not have foreseen and anticipated that this accident might have happened." (Brackets ours.)

In the Thompson case [103 Kans. 104, 172 P. 991] the defendant had laid a 2-inch pipe line at the extreme south edge of a highway near the fence and about 25 feet from the center of the road, a ditch being between the pipe line and the roadway. The pipe line was concealed in the weeds and, at the point where it crossed the only passageway from the highway into a field, over which the plaintiff drove his threshing machine, the pipe was partially visible through the dirt. The wheel of the machine punched a hole in the pipe and the oil passing through it ignited with the fire box of the machine and completely destroyed it. In returning a verdict in favor of the plaintiff the court pointed out: "It is true, as defendant contends, that a pipe line for the transportation and distribution of oil for fuel and other purposes may lawfully be laid along a public highway. How-

-ever, it must be so laid that it will not obstruct or endanger the use of the highway for public travel. * * * As oil is of an inflammable nature, great care should be exercised in transporting it along a highway. It should be such care as is commensurate with the dangerous nature of the material and the consequences that should have been apprehended from the means employed in carrying it over the highway."

In the case of Indiana Natural & Illuminating Gas Co. v. McMath [26 Ind.App. 154, 57 N.E. 594], where a factual situation almost identical with that in the Thompson case was presented, the court said: "It is a nuisance and unlawful to place and keep or leave continuously in a public highway anything which either impedes or endangers public travel. This rule applies to the whole width of the highway, and not merely to a worn portion of it commonly used for passage."

We are of the further opinion that the trial judge's conclusion that the defendant's plea of contributory negligence was not well founded is correct for, as was pointed out in the case of Murphy v. Ludowici Gas & Oil Co., supra [96 Kan. 321, 150 P. 582], one conveying natural gas in a pipe line laid on the ground in a public highway must exercise the highest degree of care to avoid injury to those using the highway and, as was held by the court, according to its syllabus, "It is not contributory negligence on the part of one who is ignorant of the existence of a gas pipe line in a public highway to enter upon that highway * * * and fail to look for hidden pipe lines, although in a community where natural gas pipe lines are known to be laid in public roads."

In the instant case it appears that while the defendant had a permit to construct a three inch pipe line under the highway at the south end of Gilliam, Louisiana, apparently at the point where the accident occurred—although the defendant's manager who laid the line said the authority secured was for construction of the line at a point other than the scene of the accident and also said he did not seek any authority for running the pipe line through the culvert at this place, deeming it unnecessary—this permit contained the provision that "Pipe lines paralleling the highway: (a) shall occupy the last two (2) feet of the right-of-way back of the ditch except where upon showing of actual necessity, a permit is issued for another location; (b) shall have a minimum earth cover of eighteen (18) inches; (c) shall have a minimum clearance of eighteen (18) inches below existing or proposed drainage structures," as well as the further provision that "All pipe lines crossing the highway, except water and gas service lines of less than two (2) inches, O. D., shall be encased in a pipe of larger diameter."

The evidence unmistakably shows that the defendant violated every one of these requirements. The defendant laid and con-

structed the pipe line in the ditch instead of two feet back thereof, and, for at least 15 or 20 feet to the north of the culvert leading to the detour road, it was not covered with anything like 18 inches of dirt, as required. While the defendant does claim the coverage was from 8 to 14 inches, the evidence shows the pipe was only covered with loose dirt thrown on top of it, and, at the point where the pipe entered and emerged from the culvert, the most vulnerable of spots from the standpoint of the vehicles endeavoring to cross the narrow culvert, the pipe was completely exposed for a distance of from 2 to 4 feet. Also, instead of placing the pipe 18 inches below the culvert, a structure that was obviously used for the drainage of water running through the ditch, the pipe was run through the culvert and it was most certainly not encased in a pipe of larger diameter.

Moreover, the defendant not only had knowledge of the narrowness of the culvert but also had knowledge that this culvert was used by the public generally in driving vehicles over it and that these vehicles either missed the narrow culvert or slipped off of it because of the crumpled and bent condition of the culvert, and it is, therefore, chargeable with the knowledge of the probable consequence if this exposed pipe were struck by vehicles with sufficient force to break it and, consequently, is liable for the resulting damage.

The evidence in this case clearly shows that the driver of the plaintiff's truck was unfamiliar with the road on which he was travelling and when he reached the end of the pavement, in using this narrow road designated as a detour for reaching the paralleling main highway, he had the right to assume, in the absence of any notice or sign to the contrary that would have placed him on his guard, that the same was safe for passage. He was not called upon to look for hidden pipe lines or other similar dangerous instrumentalities. Besides, as found by the trial judge, the record does not support the facts alleged by the defendant as constituting the driver's contributory negligence.

For the reasons assigned the judgment appealed from is affirmed.

HAMITER, J., dissents and assigns written reasons.

HAMITER, Justice, (dissenting).

Conceding arguendo that the defendant herein was negligent in failing to lay the gas line in accordance with requirements of the Louisiana Highway Department, its negligence, in my opinion, was only the remote cause of this accident.

The immediate, efficient, and proximate cause, I think, was the negligent manner in which plaintiff's driver operated his lengthy tractor and trailer (some twenty feet long) in seeking to negotiate the detour road in question. According to the finding of fact of the trial judge, and as stated in the majority opinion of this court, the left rear

wheels of the trailer either missed or slid off the north end of the culvert, striking and breaking the pipe. Had the vehicle been carefully and prudently operated, it would have remained on the road and the mishap would not have occurred. The evidence shows that trucks of the Louisiana Highway Department, kept at a nearby station or barn, have used the detour frequently for the past several years, and none has experienced an accident there.

I respectfully dissent.