No. 37,766

HENRY MALL and MRS. HENRY MALL, *Appellees,* v. THE C. & W. RURAL ELECTRIC COÖPERATIVE ASSOCIATION, INC., *Appellant.*

(213 P. 2d 993)

Opinion filed January 28, 1950.

*W. M. Beall*, of Clay Center, argued the cause, and was on the briefs for the appellant.

*John Berglund, Jr.*, of Clay Center, argued the cause, and was on the briefs for the appellees.

The opinion of the court was delivered by

ARN, J.: This was an action by plaintiff landowners to recover for six elm trees allegedly owned by plaintiffs and cut down by defendant, a rural electric coöperative association, to make room for the construction of its electric power line. Trial was by the court, and upon judgment being rendered against defendant for treble damages pursuant to G. S. 1935, 21-2435, defendant appealed.

Plaintiffs' quarter section of land was acquired by them about March 1, 1948. In 1938 a prior owner had granted defendant an easement to enter upon this particular quarter section of land and

*to place, construct, operate, repair, maintain, relocate and replace thereon and in or upon all roads or highways abutting said lands an electric transmission line or system, and to cut and trim trees to the extent necessary to keep them clear of said electric line or system and to cut down from time to time all dead, weak, leaning or dangerous trees that are tall enough to strike the wires in falling.*

This easement was never filed of record and counsel for the electric coöperative advises us that it was its practice not to record such easements because of the expense involved. Defendant's line extended along a north and south road to a point as far north as the southeast corner of plaintiffs' farm, and this line had served plaintiff's farm with electricity for some years before plaintiffs owned it. The new construction and extension of defendant's line was to extend 300 feet north from the southeast corner of plaintiffs' land and along plaintiffs' east line on the west side of the township road. The township road along the east side of plaintiffs' farm was established under the public road law of 1874, and has a present width of sixty feet. It is said by appellees that no compensation was ever made for the right of way to the original abutting landowner or his successors, but the record is silent as to whether compensation was ever paid. It is apparent, however, that no compensation has been paid by appellant for the taking of the trees which are the subject of this litigation. The six shade trees were located within the highway right of way and were cut down about May 3, 1948, by the White Construction Company which was working for the defendant under a contract to clear 162 miles of line.

The memorandum opinion of the trial court includes the following findings:

"The trees were located some four to six feet from the right of way line of a township road in the highway. . . . It is not questioned that the ownership of the ultimate fee in the roadway is in plaintiff. The state and its subdivisions acquired only the right to use the land for highway purposes; that this includes the right to grant use of the right of way to public utilities such as defendant, and that such right is not an additional servitude is conceded."

. . . . . . . . . . . . . .

"There is no evidence to support a claim nor does defendant seriously urge that the cutting in this case was unavoidable or absolutely necessary. On the contrary from the evidence, and from a view of the premises in company with counsel for both parties, I reach the conclusion that the cutting which was done, that is the total destruction of the trees was unnecessary. It follows that plaintiff is entitled to recover.

"I find the trees to be of a value as follows: Two large trees, $25.00 each and four small trees, $5.00 each.

"The treble damage rule being applicable, plaintiff is entitled to judgment against defendant for $210.00 and costs."

Appellant contends first that the actual cutting of the trees was done for it by the White Construction Company, and said company being an independent contractor, appellant is not liable for its tortious acts. However, the testimony of appellant's manager was that the White Construction Company had a contract with appellant to *clear* 162 miles of line, and pursuant to this contract the White Construction Company cut the trees in question while working for appellant. So the contractor was hired to do the specific act of cutting the trees. Under such circumstances there is no merit to appellant's contention. Appellant cannot shelter itself under the plea that its independent contractor was the immediate wrongdoer, and did the act in execution of a contract when such tortious act was the very one contracted for. It is immaterial whether the employer's agent is an independent contractor, when the very act contracted for is illegal or wrong in itself (27 Am. Jur. 518, § 40). The rule is also stated in 76 A. L. R. 1257 thus:

"Where an injury is occasioned to a third person as the direct result of the doing of work contracted to be done, and not as a result of negligent acts of the contractor, the employer is liable for such injury. In other words, he is answerable for injuries which necessarily follow the performance of the work, and which are not the result merely of collateral negligence of the contractor. . . . In such cases, the injury results not from the manner in which the work is done, but from the fact that it is done at all."

We fail to find any merit in appellant's argument that it cannot be liable for the cutting of appellees' trees since they were cut by an independent contractor working under a specific contract to cut them. If the cutting of the trees was wrongful, appellant is liable therefor.

It is next argued by appellant that appellee landowners had no interest in the trees located within the township highway right of way such as will entitle appellees, as adjacent landowners, to recover for the loss thereof. Appellant, at the time the trees were felled, was operating under the "electric coöperative act," art. 46, ch. 17 of G. S. 1947 Supplement. G. S. 1947 Supp., 17-4604 enumerates the powers of electric coöperatives, including:

"A coöperative shall have power: (i) To construct, maintain and operate electric transmission and distribution lines along, upon, under and across publicly owned lands and public thoroughfares, roads, highways, streets, alleys, bridges and causeways in conformity with the laws of the state of Kansas."

Kansas is among the few states which authorize such additional construction upon the highways without it being regarded as an additional servitude for which compensation must be paid to the abutting landowner (*McCann v. Telephone Co.*, 69 Kan. 210, 76 Pac. 870, 66 L. R. A. 171; *Empire Natural Gas Co. v. Stone*, 121 Kan. 119, 245 Pac. 1059). See, also, *State, ex rel., v. Weber*, 88 Kan. 175, 127 Pac. 536, in which syllabus paragraph 2 states the rule as follows:

"A person may build and maintain such a line on a rural highway without having obtained a franchise or special license from any officer, providing it is done in a way that will not seriously impede or endanger public travel or unnecessarily interfere with the reasonable use of the highway by other members of the public *and there is no invasion of the rights of the owners of abutting lands.*" (Emphasis supplied.)

As broad as this authority may seem to be, it does not authorize appellant to take private property without due process of law. The use of the right of way to erect poles is one thing—but destruction of appellees' shade trees in doing so is quite another thing.

The right of way of the township road along which the trees in question were located was acquired in the 1870's from appellees' predecessors in title. By that "taking," with or without compensation, the public acquired only an easement for highway purposes and the landowner, his successors and assigns continued to own the fee to the center line of the township road. Shade trees and shrubs on the right of way of a township road to which the fee belongs to the

abutting owner, are a part of the fee and cannot be taken for private purposes or for purposes inconsistent with highway purposes without full compensation to the fee owner (*Comm'rs of Shawnee Co. v. Beckwith*, 10 Kan. 603, 608; *McCann v. Telephone Co.*, supra (1. c. 212); 18 Am. Jur. 837, § 206; 25 Am. Jur. 440, § 145; 25 Am. Jur. 592, § 301; Vol. II, Elliott on Roads and Streets, page 1144, § 877). See, also, *Remington v. Walthall*, 82 Kan. 234, 108 Pac. 112, holding a city officer who unnecessarily cuts down trees along the street right of way is liable to the abutting owner. And note that in *State, ex rel., v. Weber*, supra, at page 180, we held that a public utility may build electric transmission lines along the right of way of a rural highway, *subject to the condition that such use does not invade the rights of the owners of abutting lands*. See, also, *Rienhoff v. Gas & Electric Co.*, 177 Mo. A. 417, 162 S. W. 761, Syl. ¶ 2, holding that a telephone company is liable to a property owner for the destruction of shade trees located in the parkway between the sidewalk and street in placing its wires and poles, notwithstanding the fact that it had the right to erect the poles where it did.

The highway authorities could have felled or uprooted the trees or otherwise destroyed them if necessary in order to widen the travelled way or in order to construct adequate drainage ditches. Under our law there are additional uses of the right of way available to certain public utilities where the use is for the public interest. We would not alter the rule long established in this state that the use of rural highways for the erection or laying of telephone lines, electric transmission lines, water mains, gas pipe lines or other public utilities, does not create an additional servitude entitling the fee owner to additional compensation. That rule is too well established to say now that such public utilities must obtain permission of the abutting landowner and pay him for the right to lay or erect its lines along the highway right of way. The appellant had the right to erect its poles upon the highway right of way, but this right of a public utility does not permit it to damage, take or destroy private property located within the right of way and belonging to the abutting owner without paying him for the property so destroyed, damaged or taken. Appellant relies on *State, ex rel., v. Weber*, supra; *McCann v. Telephone Co.*, supra; *State v. Natural-gas Co.*, 71 Kan. 508, 80 Pac. 962; and *Empire Natural Gas Co. v. Stone*, supra, as holding that public utilities have a right to lay or erect their lines

on public highways when not inconsistent with the highway purpose without additional compensation for such additional servitude to the person whose land was taken for the highway right of way. These cases and many others do so hold—but to this rule must be added the proviso that no property of the abutting owner may be taken or destroyed, and no unnecessary damage caused him without full compensation. In the instant case appellees are not contesting appellant's right to erect its poles and lines upon the highway—this is not a proceeding for injunction. Appellees merely seek recovery in money for their property taken by appellant, and they are entitled to recover judgment therefor.

It is also argued that appellees are estopped to challenge appellant's right to take the trees under appellant's unrecorded· easement for the reason that appellees knew of the existence of such easement, or had notice of such facts as would put them on inquiry as to appellant's rights. But we have some difficulty in gleaning from the provisions of the easement authority to fell and destroy trees *unless* they are dead, weak, leaning or dangerous trees that might strike the wires in falling. There was no evidence that the trees in question fitted this description, and accordingly the trial court found that the total destruction of the trees was unnecessary. Furthermore, the evidence was insufficient to show that appellees knew of the existence of the easement. They did know that an electric power line of appellant's extended north as far as appellees' southeast corner line, because appellees were customer-members of appellant coöperative and their predecessor in title had been also. It might even be said that such knowledge was sufficient to put appellees upon notice that the appellant had some kind of easement extending *south* from appellees' southeast corner because the line and poles were in place there. But the trees which are the subject of this litigation were located *north* of appellees' southeast corner and upon land which was to constitute a new route for appellant's transmission line. The evidence did not show that appellees had any reason to know of the existence of an easement along their east boundary line—even if the terms of the unrecorded easement had been sufficient to authorize appellant to take and destroy appellees' trees.

Finally appellant argues that even though appellees are entitled to recover the reasonable value of the trees felled, they are not entitled to treble damages for the reason that G. S. 1935, 21-2435 applies only to trees upon a claimant's own land, and appellees' trees were *in the right of way* of the township road.

The pertinent portion of G. S. 1935, 21-2435 reads:

"If any person shall cut down, injure or destroy or carry away any tree placed or growing for use, shade or ornament, or any timber, rails or wood standing, being or growing on the land of any other person; . . . the party so offending shall pay to the party injured treble the value of the thing so injured, broken, destroyed or carried away, with costs, and shall be deemed guilty of a misdemeanor, and shall be subject to a fine not exceeding five hundred dollars."

The words of this statute *"tree . . . growing on the land of any other person"* do not, appellant contends, apply to trees growing within the right of way of a rural highway. We have already said that the abutting landowner owned the fee in the highway right of way. Therefore, as far as the ownership of the trees is concerned, they were *growing on the land of appellees*—and section 21-2435 is applicable to require treble damages for their destruction.

There is no error in the record and the judgment of the trial court is affirmed.