126 So.2d 898 (1961)
Ernest W. BURCH, Appellant,
v.
J.L. STRANGE and Horne Lumber Supply Company, a corporation, Appellees.
No. C-23.
District Court of Appeal of Florida. First District.
February 21, 1961.
Clayton, Arnow, Duncan & Johnston and Tench & Reynolds, Gainesville, for appellant.
Bates, McGowan & Jones and Gray, Chandler, O'Neal & Carlisle, Gainesville, for appellees.
CARROLL, DONALD K., Judge.
One of the defendants in an action for trespass has appealed from a final judgment *899 entered against him by the Circuit Court for Alachua County, based upon a verdict directed by the court for the plaintiff during the trial.
The principal question on this appeal is whether the trial court committed error in directing the verdict against the appellant. The plaintiff alleged in his complaint that he and the appellant were adjoining land owners and that the appellant wrongfully trespassed upon the plaintiff's lands and, while upon them, cut trees and otherwise defaced the said property, and thereby greatly and permanently damaged the lands. The plaintiff demanded both compensatory and punitive damages.
At the trial the evidence showed that numerous trees on the plaintiff's lands were cut by one Lawrence Simmons, a logger, without the plaintiff's knowledge or consent. Simmons also cut trees on the adjoining lands owned by the appellant. The appellant testified that he had made a contract with Simmons to sell the latter certain of the trees on his lands and that he did not instruct Simmons to cut trees on the plaintiff's lands and did not indicate to Simmons that the plaintiff's lands belonged to him, the appellant. The appellant's testimony was such that, if believed, the jury could have found therefrom that Simmons bore to the appellant the relation of an independent contractor, rather than that of an agent or employee. There was no evidence that the appellant himself cut any trees on the plaintiff's lands.
If the jury were to find that the said Simmons bore the relation of an independent contractor to the appellant, was the appellant thereby legally responsible for the acts of Simmons in cutting down the trees on the lands of the appellee Strange? The answer to this question can be found only after a consideration of the decisions of the courts of this state concerning the liability of a person for the acts of his independent contractor.
The general rule that a person is not liable for the torts of his independent contractor is subject to a number of exceptions recognized by the courts of Florida. See discussion of this rule and its exceptions in 17 Fla.Jur. Independent Contractors, Sec. 5, pages 178-80. A major exception is when the employer has the right to direct or control the performance of the work or the manner of its accomplishment, for then the master and servant relationship arises as a basis for imposing liability upon the employer. See Mumby v. Bowden, 1889, 25 Fla. 454, 6 So. 453, and St. Johns & H.R. Co. v. Shalley, 1894, 33 Fla. 397, 14 So. 890, and Gulf Refining Co. v. Wilkinson, 1927, 94 Fla. 664, 114 So. 503. This exception, basically considered, is more apparent than real, for, when such control exists, the worker bears the relation of servant or employee to the employer rather than that of independent contractor. This distinction is ably delineated by Judge Kanner, speaking for the District Court of Appeal, Second District of Florida, in King v. Young, 1958, 107 So.2d 751, 753 when he wrote, and we quote with approval:
"The status of an independent contractor, as distinguished from that of an agent, consists of a contractual relationship by one with another to perform something for him, but the one so engaged is not controlled or subject to the control of the other in the performance of the engagement but only as to the result. Conversely, a principal in an agency relationship retains the right to control the conduct of an agent in regard to the engagement intrusted to him. It may be said that the recognized distinction between an agent and an independent contractor relationship is determined by whether the person is subject to or whether he is free from control with regard to the details of the engagement. See Florida Industrial Commission v. State, 1945, 155 Fla. 772, 21 So.2d 599; and 2 Am.Jur. Agency, Section 8, p. 17."
Another exception to the above general rule of nonliability for the torts of an independent contractor arises when the act *900 contracted for is tortious. This exception was recognized by the Supreme Court of Florida in National Rating Bureau, Inc. v. Florida Power Corporation, 1957, 94 So.2d 809, 811, 64 A.L.R.2d 859, involving a suit to enjoin an electric utility from occupying a certain strip across the plaintiff's lands without payment of damages for cutting certain trees on the strip. The lower court held that the utility was not liable for damages, as these were the responsibility of an independent contractor who had done the cutting. The Supreme Court held:
"The question for us to decide is whether the defendant had the right to cut the trees from the street without compensating the owner of the abutting lands. If the defendant did not have this right then its contract with Hardee was for a tortious purpose and even though Hardee was an independent contractor defendant would be responsible for the damage to the abutting owners, not only for the trees cut in the right-of-way but on the adjacent lands as well. The independent contractor doctrine does not relieve the employer of responsibility for the negligent acts of the contractor where the work to be done under the contract, of itself, operates to injure the property of another. Weinman v. De Palma, 1914, 232 U.S. 571, 34 S.Ct. 370, 58 L.Ed. 733; Mall v. C. & W. Rural Electric Cooperative Ass'n., 1950, 168 Kan. 518, 213 P.2d 993. See Annotation in 21 A.L.R. 1262 and cases there cited, also 27 Am.Jur., Independent Contractors, Sec. 40."
On rehearing, the Supreme Court reiterated its conclusion "that the act contracted for being tortious, the defendant cannot escape responsibility for the acts of the contractor because he was an independent contractor."
Another exception to the above general rule of nonliability was recognized by the District Court of Appeal, Second District of Florida, in the recent case of Easton v. Weir, 1960, 125 So.2d 115. In that case the court held that, where a landlord gratuitously or voluntarily assumed the duty of replacing the roof on its building which was occupied and under the control of the tenant, the landlord was under a duty to see that no injury would be sustained by the tenant in the making of the repairs, and the landlord could not absolve itself from liability by employing an independent contractor to perform the repairs. The tort involved was negligence in failing to exercise reasonable care in maintaining a proper control over the contractor.
It will be noted that the above cases involve the tort of negligence, but we know of no sound reason why analogous principles should not be applicable in cases involving the tort of trespass, as in the instant case. Our attention has been called to no Florida case in which an appellate court has discussed the general rule as to the liability of a person for acts of trespass committed by an independent contractor, or the exceptions to such general rule, and our independent research has uncovered none. However, in the light of the above authorities in cases involving negligence, we are of the opinion that the same principles ought to apply in cases of trespass. Accordingly, we are of the opinion that the general statement of the rule as set forth in 87 C.J.S. Trespass § 31, p. 989, fairly expresses the legal principles applicable in Florida: "Where the trespass is done by an independent contractor, the other party is not liable for it when it is not authorized in any way by the contract unless such other party controls the work or authorizes the specific act." This statement of the law is well supported by the authorities it cites in the footnotes.
Since neither this court nor the trial court has power to weigh the evidence and substitute the court's judgment on the facts for the determination by the jury, there is no need to detail here all of the evidence which was adduced at the trial. The trial court directed a verdict *901 against the appellant, and so, to demonstrate error, we need only to point to the competent, substantial evidence at the trial from which the jury could have lawfully drawn conclusions of fact in favor of the appellant.
The jury at the trial had the right to believe the testimony of the appellant. Believing it, the jury could properly have inferred therefrom and concluded that Simmons was not the agent or employee of the appellant but was rather an independent contractor; that the appellant's contract with Simmons did not authorize the acts of trespass; and that the appellant did not control the work of Simmons nor authorize the specific acts of trespass. There was no evidence at the trial that the appellant personally trespassed on the lands owned by the appellee Strange. Under these circumstances the jury could have lawfully brought in a verdict in favor of the appellant finding him not guilty of trespass. The jury should not have been deprived of their right so to find.
In addition to the trespasses by Simmons, the evidence also showed that the appellant entered into an agreement with a local radio station for the erection of a sign on his land, but the sign was actually erected upon Strange's land after a number of trees had been cut around it to make it more easily visible. The same observations may be made about these trespasses as those by Simmons  namely, that the jury could have lawfully inferred from the evidence, especially the testimony of the appellant himself, that these trespasses were not committed by an agent or employee of the appellant but by his independent contractor and that such trespasses were not authorized by the contract nor by the appellant, who did not control the work. These factual issues, also, should have been submitted to the jury for their determination.
In this consideration it is appropriate to recall some of the established principles applicable in this state to the granting of a motion for a directed verdict. Some of these principles pertinent here are as follows:
Since one moving for a directed verdict admits every reasonable inference favorable to the opposite party that a jury might fairly and reasonably arrive at from the evidence, and since, as we have seen, the jury might have fairly and reasonably inferred from the testimony of the appellant that he was not liable in trespass, the trial court committed error in directing the jury to find that the appellant was guilty of trespass. Under these conditions it is immaterial that there may be substantial evidence before the jury to the contrary even if such evidence to the contrary is ample. The jury, as the triers of the facts, have the right to weigh and consider the conflicting evidence as well as the conflicting inferences that could reasonably be drawn from the evidence in reaching their conclusions on the factual issues.
The power to direct a verdict should be cautiously exercised, and a motion for a directed verdict should never be granted unless the evidence is such that under no view which the jury might lawfully take of the evidence favorable to the adverse party could a verdict for the latter party be sustained. Metropolitan Life Ins. Co. v. Jenkins, 1943, 152 Fla. 486, 12 So.2d 374; Katz v. Bear, Fla. 1951, 52 So.2d 903.
A motion for a directed verdict admits for the purpose of such motion the facts in evidence and every reasonable and proper conclusion based thereon which is favorable to the adverse party. Hartnett v. Fowler, Fla. 1957, 94 So.2d 724. One moving for a directed verdict against his opponent admits not only the facts shown by the evidence but also admits every reasonable inference favorable to his opponent that a jury might fairly and reasonably arrive at from the evidence. Cutchins v. Seaboard Air Line R. Co., Fla. 1958, 101 So.2d 857.
*902 Applying these principles to the instant case, we are of the view that the jury could have fairly and reasonably concluded from the evidence that the appellant was not guilty of the acts of trespass upon the appellee Strange's land. This being so, the trial court was without authority to direct a verdict for Strange against the appellant, and the final judgment based upon the verdict so directed cannot be sustained.
The final judgment appealed from is, therefore, reversed, and the cause is remanded with directions for further proceedings consistent with the views herein expressed.
Reversed and remanded with directions.
WIGGINTON, Chief Judge, and STURGIS, J., concur.